SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
PAUL S. MALINGAGIO, SBN. 90451
ALAN M. FELD, SBN 155345
SHADI FARZAN, SBN 301610
ALEXANDRIA G. LATTNER SBN. 314855
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone:    213.620.1780
Facsimile:    213.620.1398
Email:    pmalingagio@sheppardmullin.com
    afeld@sheppardmullin.com
    sfarzan@sheppardmullin.com
    alattner@sheppardmullin.com

MICHAEL M. LAUTER, SBN 246048
JEANNIE KIM, SBN 270713
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:    mlauter@sheppardmullin.com
    jekim@sheppardmullin.com

Proposed Attorneys for Debtor and Debtor in Possession BUCKINGHAM HEIGHTS BUSINESS PARK (a California Limited Partnership)

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BUCKINGHAM HEIGHTS BUSINESS PARK (A CALIFORNIA LIMITED PARTNERSHIP),<br><br>    Debtor. | Case No. 2:21-bk-17060-BB<br><br>Chapter 11<br><br>**DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER DETERMINING ADEQUATE ASSURANCE OF PAYMENT OF UTILITY SERVICES**<br><br>[Declaration of Matthew Sullivan in Support of First Day Motions filed Concurrently Herewith]<br><br>Date:    September **[•]**, 2021<br>Time:    TBD<br>Judge:   Hon. Sheri Bluebond<br>Place:    Courtroom 1539<br>          255 E. Temple St.<br>          Los Angeles, CA 90012 |

SMRH:4814-0919-4998.7

-1-

73PX-332801

# I.

# INTRODUCTION

Buckingham Heights Business Park (a California Limited Partnership) (the "Debtor"), the Debtor in the above-captioned bankruptcy case, moves this Court on an emergency basis pursuant to section 366 of the Bankruptcy Code[1] for entry of an order in the form attached hereto as **Exhibit A** that: (a) determines that by the receipt by certain public and private utilities (the "Utilities") that provide utility services (such as electricity, gas, and water) to the Debtor and its tenants of a deposit (the "Deposit") in an amount equal to the estimated fourteen-day usage based on the total amount invoiced by the Utilities on the most recent bill for each utility service, constitutes adequate assurance of payment and future performance under Bankruptcy Code section 366; and (b) otherwise prohibits the Utilities from altering, refusing, or discontinuing post-petition utility services without further order of this Court. The Debtor seeks this relief first on an interim basis with final relief to be provided at a hearing set by the Court within 20 days of the petition date.

The relief requested in this motion is necessary and appropriate to ensure a smooth transition into this chapter 11 case, to normalize and maintain the Debtor's operations during the pendency of this case, and to preserve and maximize value for the benefit of the Debtor's creditors. If the utility service at the business park was lost, then the Debtor and its tenants conducting their businesses out of the property would not be able to operate, and the value of the Debtor's estate would be significantly reduced. Given that the Debtor is prepared to provide each of the Utilities with adequate assurance of payment in the form of a deposit in the amount of the estimated fourteen-day usage for each Utility based on each most recent Utility bill prior to the Debtor's entry into bankruptcy, the relief requested is necessary and appropriate under the circumstances.

---

[1] Unless otherwise indicated, all section references in this Motion shall be to 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

This motion is based on the concurrently filed *Declaration of Matthew Sullivan in Support of Debtor's First Day Emergency Motions* (the "Sullivan Declaration") and the other papers of record in this case.

## II.

## STATEMENT OF FACTS

### A.   The Debtor's Background

The Debtor is a California limited partnership that is party to a ground lease of a multi-tenant business and industrial park in Culver City, California (the "Ground Lease"). The Debtor has filed this case in order to obtain a breathing spell from state court litigation and harassment from the ground lessor and to use the provisions of the Bankruptcy Code to market its leasehold interest in the aforementioned business park for sale, investment, or joint ventures, all in order to provide for the renovation of the business park and allow the Debtor to maximize the value of its leasehold interest to benefit of the Debtor's estate.

The Debtor incorporates herein by this reference the detailed discussion of the Debtor's background, capital structure (i.e., there is no secured debt on the Debtor's leasehold interest in the Property and operates on cash flow produced by the Property), and the events precipitating the Debtor's chapter 11 filing set forth in the *Declaration of Matthew Sullivan in Support of Debtor's First Day Emergency Motions* filed concurrently with the filing of this Motion.[1]

### B.   The Debtor's Utilities

The Debtor is party to the Ground Lease through which it operates and manages a business park in Culver City, CA situated on 19.3 acres and has 844,628 square feet of office space. The Debtor, in connection with its management company, provides office and industrial space to approximately 73 subtenants. Although the individual tenants pay for certain utilities such as internet and telephone services, the Debtor pays for, among other things, the following utilities: water, gas, electric, trash, and telephone service to the elevators. The Utilities charge the Debtor

---

[1] Capitalized terms not otherwise defined in this Motion shall have the same meanings ascribed to them in the First Day Declaration.

directly for these services on a monthly basis.  The Debtor's utility-related obligations are owed to a number of different utility providers, identified on <u>Schedule 1</u> attached hereto.  The Debtor is current on all pre-petition obligations to the Utilities.

Continued provision of utility service to the business park is critical to the Debtor's operations and survival.  The business park's tenants need electricity to run their businesses, water for plumbing, and gas for heating the office space.  Without the ability to keep the business park open and its business tenants satisfied during this process, the Debtor would lose its revenue stream, and the Debtor's ability to maintain the going concern value of its business would be seriously jeopardized.  It is key to the Debtor's viability going forward that it operate business as usual during the chapter 11 case.  Any disruption in that effort may prove fatal to the Debtor's reorganization efforts.

**C.    The Proposed Deposits**

Section 366 of the Bankruptcy Code governs the rights and obligations of companies that provide utility services to a debtor in possession.  Section 366(c)(2) provides that in a chapter 11 case, a utility may "alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility."  11 U.S.C. § 366(c)(2).  This parallels the more general provision in section 366(b), which provides that a utility may alter, refuse or discontinue service if adequate assurance is not received within 20 days of the petition date.  11 U.S.C. § 366.  Section 366(c)(1)(A) provides a list of acceptable forms of adequate assurance, one of which is "a cash deposit."  11 U.S.C. § 366(c)(1)(A).

The Debtor is prepared to provide each Utility with adequate assurance of payment in the form of a deposit ("Deposit"), which is intended to equal the cost of the utility services for two weeks (the "Estimated Fourteen Day Usage").  Average monthly bills for the Utilities range from approximately $35 to $7,000.  If a Utility provides separate bills to the Debtor on account of separate accounts, the Deposit will equal the aggregate Estimated Fourteen Day Usage for all of the accounts that are served by such Utility.  The Debtor's estimates are based on each Utility's

1 most recent bill, which in each case the Debtor believes is for an amount equal to or higher than
2 the average of such bills over the six month period ending July 31, 2021.  Attached hereto as
3 <u>Schedule 1</u> is a chart listing each of the Debtor's Utilities, the total invoiced amount on the most
4 recent bill for each Utility, and the proposed Deposit based on the Estimated Fourteen Day Usage.

5      Nothing in the Utility Order (defined below), however, will require the Debtor to provide a
6 Deposit to any Utility.  If the Debtor does not furnish a Deposit within the 30-day period
7 following the Petition Date, the Utility may thereafter alter, refuse, or discontinue service.

8      In accordance with section 366(c)(1)(A), within five (5) days of the Court's entry of an
9 order approving this motion (the "<u>Utility Order</u>"), the Debtor will serve each Utility with a copy of
10 the Utility Order and a notice of the amount of the Deposit that the Debtor proposes to provide
11 each Utility on or before the 30th day of this case. In accordance with section 366(c)(2), if a
12 Utility believes that the Deposit does not constitute adequate assurance of payment satisfactory to
13 that Utility, then such Utility will be required, within ten (10) days following the date of service of
14 the Utility Order, to both file with the Court and serve on the Debtor a specific request for
15 additional adequate assurance (the "<u>Additional Assurance Request</u>").  The Additional Assurance
16 Request must: (a) be in writing, (b) describe the reasons why the Deposit does not constitute
17 satisfactory adequate assurance of payment to the Utility, (c) include a proposal for what would
18 constitute satisfactory adequate assurance of payment, along with the justifications therefore, and
19 (d) be filed with the Court and served on proposed bankruptcy counsel for the Debtor via mail and
20 email at:  Sheppard, Mullin, Richter & Hampton LLP, Attn: Michael M. Lauter, Esq., Four
21 Embarcadero Center, 17th Floor, San Francisco, CA 94111; mlauter@sheppardmullin.com and
22 alattner@sheppardmullin.com.

23      If a Utility does not file and serve an Additional Assurance Request in accordance with this
24 paragraph, such Utility will be deemed to have received satisfactory adequate assurance of
25 payment and will be prohibited from thereafter altering, refusing, or discontinuing service to the
26 business park on the ground that it has not received adequate assurance of payment as
27 contemplated by section 366.

28

If one or more Utilities submit an Additional Assurance Request, and the Debtor and the Utility are unable to resolve the issues underlying the Additional Assurance Request, the Debtor will seek to schedule an expedited hearing (the "Adequate Assurance Hearing") to address such request(s) to be held on or before the 30th day following the Petition Date, and the Debtor will serve notice of any such Adequate Assurance Hearing on the affected Utilities.  If the Adequate Assurance Hearing cannot be held on or before the 30th day following the Petition Date, the Debtors will obtain the next available hearing date to conduct the hearing, and the Utilities will be prohibited from altering, refusing, or discontinuing service to the Debtor prior to the Adequate Assurance Hearing.

## III.

## ARGUMENT

Sections 366(b) and (c)(2) of the Bankruptcy Code each prohibit a utility company from altering, refusing, or discontinuing service in the early days of a bankruptcy case.  The prohibition in section 366(b) lasts for 20 days, and the prohibition in section 366(c), which is specific to chapter 11 cases, lasts for 30 days.  This more specific provision 366(c)(2) should apply in this chapter 11 case, such that the prohibition lasts for 30 days from the Petition Date.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (U.S. 2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.") (citation and quotation marks omitted); 3 Collier on Bankruptcy, ¶ 366.03[2]  (16th ed. rev. 2021) ("The better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period in that subsection, rather than the 20-day period in section 366(b), should apply.")

After the expiration of that initial 30-day period, a utility company may alter, refuse or discontinue service if the debtor has not, within that initial time period, furnished "adequate assurance of payment for utility service that is satisfactory to the utility."  *See* 11 U.S.C. § 366(c)(2); *see also* 11 U.S.C. § 366(b).  Section 366 is therefore designed to both provide utility companies with adequate assurance that debtors will be able to pay for post-petition services and

1 to protect debtors from utility service cutoffs.  *See* H.R. Rep. No. 95-595, at 350 (1978), as

2 reprinted in 1978 U.S.C.C.A.N. 5963, 6306.

3       As to the form of adequate assurance, section 366(c)(1)(A) provides a list of items

4 constituting "adequate assurance of payment": (a) a cash deposit; (b) a letter of credit; (c) a

5 certificate of deposit; (d) a surety bond; (e) a prepayment of the utility; or (f) another form of

6 security that is mutually agreed on between the utility and the debtor or the trustee.  While the

7 statute specifies the form of assurance that will be deemed to be adequate, the question of the

8 amount of assurance that must be provided is left to this Court's discretion.  *See, e.g.*, *S. Cal.*

9 *Edison Co. v. Crystal Cathedral Ministries* (*In re Crystal Cathedral Ministries*), 454 B.R. 124,

10 131-132 (C.D. Cal. 2011) (bankruptcy court has discretion to determine both form and amount of

11 adequate assurance if the parties do not reach agreement, so long as the form is one of the types

12 identified in Bankruptcy Code section 366(c)(1)(A)).

13       Courts have generally looked to the facts and circumstances of each case to ensure that

14 utility companies were not subjected to an unreasonable risk of nonpayment for post-petition

15 services.  *See e.g.*, *In re Astle,* 338 B.R. 855, 861, n.14 (Bankr. D. Idaho 2006); *In re Keydata*

16 *Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981).  Courts construing section 366 have long

17 recognized that adequate assurance of payment does not constitute an absolute guaranty of the

18 debtor's ability to pay.  *See, e.g.*, *Crystal Cathedral Ministries*, 454 B.R. at 131  ("The language of

19 the statute makes clear, however, that [the utility] is entitled to receive adequate assurance of

20 payment, which is not to be confused with actual payment or an absolute guarantee of payment.");

21 *Steinebach v. Tucson Elec. Power Co.* (*In re Steinebach*), 303 B.R. 634, 641 (Bankr. D. Ariz.

22 2003) ("In determining adequate assurance, a Bankruptcy Court is not required to give a utility

23 company the equivalent of a guarantee of payment, but must only determine that the utility is not

24 subject to any unreasonable risk of non-payment for post-petition services.") (*quoting In re*

25 *Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)).  Further, courts have

26 recognized that, in determining what constitutes adequate assurance, a bankruptcy court must

27 "focus upon the need of the utility for assurance, and . . . require that the debtor supply no more

28

1  than that, since the debtor almost perforce has a conflicting need to conserve scarce financial

2  resources." *Virginia Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646, 650 (2d Cir. 1977)

3  (*quoting In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987), *superseded by statute*

4  *in irrelevant part as noted at* 338 B.R. 855, 861 n.15.

5       As set forth above, section 366(c)(1) provides that a cash deposit, the form of adequate

6  assurance proposed by the Debtor in this case, constitutes an acceptable form of adequate

7  assurance.  The Debtor submits that this is the most appropriate form of assurance in this case.

8  **IV.**

9  **EMERGENCY CONSIDERATION**

10       The Debtor respectfully requests emergency consideration of this motion pursuant to

11  Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the

12  commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and

13  irreparable harm."  The relief requested in this motion is needed on an emergency basis because

14  the Debtor's business park hosts businesses and office workers that are dependent on the

15  continued provision of utilities to those locations.  Any disruption in the utilities provided to the

16  business park could threaten the use of such properties and challenge their ability to continue to

17  work at the business park.  Although for certain locations the motion may at first appear

18  unnecessary due to the fact that Bankruptcy Code section 366(c) provides that a utility cannot

19  deny service to a chapter 11 debtor for 30 days after the petition date even in the absence of a

20  motion such as this, a critical aspect of the order sought in this motion is the certainty that the

21  order provides in dealing with Utilities, rendering a dispute over the meaning of Bankruptcy Code

22  section 366(c) unnecessary and avoiding unnecessary disruptions and litigation.  The Debtor needs

23  to obtain the certainty afforded by this motion now so that it can be confident that its tenants will

24  not be irreparably disrupted by an issue with one of the Utilities.

25  **V.**

26  **REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS**

27

28

1   The Debtor respectfully requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor and the tenants of the business park.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## VI.
## RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or non-bankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code.  The Debtor reserves all of its rights under the Bankruptcy Code.

## VII.
## NOTICE

Notice of this motion has been provided by email, facsimile, or first class mail to: (i) the Office of the U.S. Trustee Region 16; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) the Utilities listed on Schedule 1 attached hereto; (iv) counsel for the Ground Lessor of the Debtor's business park, Buckingham Heights Lease LLC; and (v) those persons who have formally appeared in this chapter 11 case and requested service pursuant to Bankruptcy Rule 2002.

No prior request for the relief sought in this motion has been made by the Debtor to this Court or any other court.

# VIII.

# CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant this motion and enter an order in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.  Such relief is requested first on an interim basis with final relief to be provided at a hearing set by the Court within 20 days of the petition date.

Dated:  September 8, 2021

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    /s/ *Michael M. Lauter*
           MICHAEL M. LAUTER

Proposed Attorneys for Debtor,
Buckingham Heights Business Park (a California Limited Partnership)

**EXHIBIT A**

**[Proposed Order]**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BUCKINGHAM HEIGHTS BUSINESS PARK (A CALIFORNIA LIMITED PARTNERSHIP),<br><br>    Debtor. | Case No. 2:21-bk-17060-BB<br><br>Chapter 11<br><br>**[PROPOSED] ORDER APPROVING DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER DETERMINING ADEQUATE ASSURANCE OF PAYMENT OF UTILITY SERVICES**<br><br>Date:    September **[•]**, 2021<br>Time:   TBD<br>Judge:  Hon. Sheri Bluebond<br>Place:   Courtroom 1539<br>           255 E. Temple St.<br>           Los Angeles, CA 90012 |

The *Debtor's First Day Emergency Motion for Order Determining Adequate Assurance of Payment of Utility Services* (the "Utilities Motion"), filed on September 8, 2021 as Docket No. __ by Buckingham Heights Business Park (a California Limited Partnership) (the "Debtor"), the debtor in the above-captioned bankruptcy case, came before the Court for hearing on September __, 2021 at ___ _.m.  Appearances were as noted on the record.  Based upon the Court's review of the Utilities Motion, the declarations and other pleadings filed in support of the Utilities Motion, the arguments of counsel at the hearing on the Utilities Motion, and all pleadings and evidence of record in this case,

**IT IS HEREBY ORDERED THAT:**

1.    The Utilities Motion is GRANTED on an interim basis.  Capitalized terms not defined in this Order shall have the meanings given to them in the Utilities Motion.

2. The Debtor is authorized but not directed to remit the Deposits to the Utilities as set forth in this Order.

3. Subject to the procedures set forth in this Order, the Utilities are prohibited from altering, refusing, or discontinuing post-petition utility service to the Debtor without further order of this Court.

4. Within five days of this Order, the Debtor shall serve each Utility with a copy of this Order and a notice of the Deposit that the Debtor proposes to provide the Utility on or before October 8, 2021; provided, however, that nothing in this Order requires the Debtor to deliver such Deposit to a Utility, and if such Deposit is not delivered to a Utility by October 8, 2021, such Utility may thereafter alter, refuse or discontinue service to the Debtor.

5. The Utilities shall have ten days from the date of service of this Order to both file with the Court and serve on the Debtor's proposed counsel an Additional Assurance Request, which, as described in the Utilities Motion, must be in writing, must describe the reasons why the Deposit does not constitute adequate assurance and must provide a proposal for adequate assurance of payment with the justifications therefor.

6. The Additional Assurance Request must be filed with the Court and served on proposed bankruptcy counsel for the Debtor via mail and email at: Sheppard, Mullin, Richter & Hampton LLP, Attn: Michael M. Lauter, Esq., Four Embarcadero Center, 17th Floor, San Francisco, CA 94111; mlauter@sheppardmullin.com; alattner@sheppardmullin.com.

7. Utilities that do not timely and properly serve an Additional Assurance Request and have received a Deposit shall be deemed to have received satisfactory adequate assurance of payment in accordance with Bankruptcy Code section 366(c)(1)(A)(i) and so may not alter, refuse or discontinue utility service to the Debtors.

8. For Utilities that timely and properly file and serve an Additional Assurance Request as further detailed in the Utilities Motion, and if the issue underlying the Additional Assurance Request has not been consensually resolved, an Adequate Assurance Hearing will be held.

9. Utilities that have filed and served an Additional Assurance Request are prohibited from altering, refusing, or discontinuing service to the Debtor unless and until, after an Adequate Assurance Hearing, the Court issues an order authorizing such action.

10. The requirements for immediate entry of this Order pursuant to Bankruptcy Rule 6003(b) have been satisfied.

11. The requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived.

12. Notwithstanding the provisions of Bankruptcy Rules 4001(a)(2) and 6004(h), this Order shall be immediately effective and enforceable upon its entry.

13. A final hearing to consider the relief requested in the Utilities Motion shall be held on [_____] at [_____] (prevailing Pacific Time) and any objections or responses to the Utilities Motion shall be filed and served so as to be actually received on or prior to [_____] at [_____] (prevailing Pacific Time).

14. The Court retains jurisdiction over the matters arising from or related to the interpretation or implementation of this Order.

# # #

## Schedule 1

## The Debtor's Utilities and Proposed Deposits

| Utility | Notice Address | Account No. | Total Amount Invoiced on Last Bills | Proposed Deposit |
|---|---|---|---|---|
| AT&T | PO Box 5025, Carol Stream, IL 60197 | 310-338-1397-276 | $224.78 | $112.39 |
| AT&T | PO Box 5025, Carol Stream, IL 60197 | 310-642-0145-076 | $222.51 | $111.26 |
| AT&T | PO Box 5025, Carol Stream, IL 60197 | 310-642-6775-185 | $212.08 | $106.04 |
| AT&T | PO Box 5025, Carol Stream, IL 60197 | 310-642-0144-051 | $210.07 | $105.04 |
| | | | Total Deposit to AT&T: | **$434.72** |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 91532100004 | $34.95 | $17.48 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 2532100001 | $1,662.45 | $831.23 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 30532100002 | $36.63 | $18.32 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 4053210000 | $828.91 | $414.46 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 71532100006 | $44.91 | $1,716.19 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 81532100005 | $685.31 | $342.66 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 14590589777 | $46.60 | $23.30 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 24330966144 | $571.35 | $285.68 |

| | | | | |
|---|---|---|---|---|
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 12855041534 | $405.68 | $202.84 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 56877175432 | $46.60 | $23.30 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 20532100003 | $34.95 | $17.48 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 50532100000 | $841.03 | $420.52 |
| Golden State Water | PO Box 9016, San Dimas, CA 91773 | 80532100007 | $573.81 | $286.91 |
| **Total Deposit to Golden State Water: $4,600.33** | | | | |
| Socal Gas | PO Box C, Monterey Park, CA 91756-5111 | 056-604-1700 | $514.75 | $257.38 |
| Socal Gas | PO Box C, Monterey Park, CA 91756-5111 | 056-704-1700 | $233.10 | $116.55 |
| Socal Gas | PO Box C, Monterey Park, CA 91756-5111 | 060-804-170 | $221.16 | $110.58 |
| Socal Gas | PO Box C, Monterey Park, CA 91756-5111 | 062-904-1700 | $144.85 | $72.43 |
| Socal Gas | PO Box C, Monterey Park, CA 91756-5111 | 065-004-1700 | $291.94 | $145.97 |
| Socal Gas | PO Box C, Monterey Park, CA 91756-5111 | 067-104-1700 | $232.50 | $116.25 |
| **Total Deposit to Socal Gas: $819.15** | | | | |
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8004054116 | $5,503.91 | $2,751.96 |
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8003990037 | $6,976.48 | $3,488.24 |
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8001589633 | $5,353.96 | $2,676.98 |

| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8004067233 | $3,737.96 | $1,868.98 |
|---|---|---|---|---|
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8003378229 | $1,259.78 | $629.89 |
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8003379799 | $1,454.22 | $727.11 |
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8004054434 | $103.93 | $51.97 |
| Southern California Edison | PO Box 300, Rosemead, CA 91772-0002 | 8004066596 | $151.55 | $75.78 |
| **Total Deposit to Southern California Edison: $12,270.90** | | | | |
| City of Culver City | 9770 Culver Blvd, Culver City, CA 90232 | 281830 | $1,807.08 | $903.54 |
| City of Culver City | 9770 Culver Blvd, Culver City, CA 90232 | 2422085 | $937.47 | $468.74 |
| City of Culver City | 9770 Culver Blvd, Culver City, CA 90232 | 2422194 | $917.59 | $458.80 |
| City of Culver City | 9770 Culver Blvd, Culver City, CA 90232 | 186593 | $1,287.33 | $643.67 |
| **Total Deposit to City of Culver City: $2,474.74** | | | | |